THOMAS MILLER, Appellant,
*against*
HENRY GOOLD, Appellee.

CASE upon a promise made to the sheriff's deputy to surrender the debtor during the life of an execution.

Summons *Henry Goold,* of, &c. to answer unto *Thomas Miller,* of, &c. deputy to the sheriff of *Rutland,* in a plea of the case, for that whereas, at *Rutland* aforesaid, on the 13th day of *April,* in the year of our Lord one thousand eight hundred and one, the plaintiff, as deputy-sheriff, received an execution in favour of *Othello Church* and *Isaac Church,* against *Jacob Goold,* junior, for the sum of sixty-eight dollars and forty-two cents, including damages and costs, taken out on a judgment recovered by the consideration of the County Court holden at *Rutland,* within and for the County of *Rutland,* on the third

<div style="font-size: smaller">An action will well lie in the <em>name</em> of a deputy-sheriff, on a promise made to him by a third person, to surrender the body of a debtor within the life of an execution.</div>

*Miller*
*v.*
*Goold.*

*Monday* of *March*, in the year of our Lord 1801, and afterwards, to wit, on the twenty-seventh day of the same *April*, the plaintiff was about to execute his office duly, as deputy-sheriff aforesaid, upon the body of the said *Jacob Goold*, junior, by virtue of said execution, and so being about to levy said execution, the defendant then and there, in consideration that the plaintiff would forbear to levy said execution upon the body of the said *Jacob Goold*, junior, agreed and promised the plaintiff that he would see the said *Jacob Goold*, junior, forthcoming to the plaintiff on the fourth *Monday* of *May* then next ensuing, at *Rutland* aforesaid, if the contents of the aforesaid execution should not otherwise be settled, paid and satisfied; and the plaintiff in fact says, that he, relying on the promise and agreement so by the defendant made as aforesaid, did forbear to levy said writ of execution on the body of the said *Jacob Goold*, junior, and the said execution remains unlevied, and in no part paid or satisfied, and that the plaintiff hath become accountable to pay to the said *Othello* and *Isaac* the contents of the said execution, yet the defendant his promise and agreement aforesaid not regarding, did not see the said *Jacob Goold*, junior, forthcoming on the said fourth *Monday* of *May*, then next ensuing the said twenty-seventh day of *April*, 1801, nor hath he paid to the plaintiff the contents of the said execution, but to do either hath neglected and refused, and still doth neglect and refuse, although often thereunto requested, by reason of which an action hath accrued, &c. *ad damnum*, 150 dollars.

And now the said *Henry Goold* comes and defends, &c. and pleads and says, that the said declara-

tion, and matter therein contained, are insufficient in law for him the said *Thomas Miller* to have and maintain his said action against him the said *Henry Goold*, to which said declaration the said *Henry* hath no need, nor is he obliged by the law of the land to make any or further answer, and this he is ready to verify, when, &c. Wherefore, for want of a sufficient declaration in this behalf, the said *Henry* prays judgment, and that the said declaration may be quashed, and the said *Henry* be hence dismissed, with his just costs; and for especial causes of demurrer, the said *Henry Goold* sets down the following, viz.

First. That the said action is commenced by said *Thomas Miller* as deputy-sheriff under *Jonathan Bell*, Esquire, sheriff of said County of *Rutland*, upon an *assumpsit* for the forbearance to levy a certain writ of execution therein mentioned, and that by law said action, if any could be maintained, should be had only in the name of the sheriff, and not in that of any deputy-sheriff.

Secondly. That the consideration for the promise set forth in said declaration is wholly illegal, and from which no *assumpsit* can be raised in law, or if expressly made, the said promise cannot be supported in law.

Thirdly. That in and by said declaration it is not alleged, that the said *Thomas Miller*, as deputy-sheriff, or any other officer who might have right to *receive*, were ready at *Rutland* aforesaid, on the said fourth *Monday* of *May*, to receive the body of the said *Jacob Goold*, junior.

That it does not appear in and by said declaration, at which place, if any, within the town of *Rutland*

VOL. II.                56

Miller
v.
Goold.

aforesaid, the said *Jacob Goold* was to be surrendered to said deputy-sheriff, nor that the plaintiff, or any one in his name, demanded of the defendant to deliver the body of the said *Jacob Goold*, junior, to be charged with said writ of execution.

Then a general exception to the declaration for want of form. Wherefore the defendant prays judgment as aforesaid, and for his costs.

> By his attorney,
> *Samuel Walker*.

And now the plaintiff, in reply to the defendant's plea above pleaded, says, that his said declaration, and the matters and things therein contained, are sufficient in law for him to have and maintain his said action against the defendant, *absque hoc;* and the defendant not denying said declaration, or in any way answering the same, he prays judgment of the Court for his said damages and costs.

> By his attorney,
> *Samuel Prentice.*

*Cook*, for the demurrant. Our first exception in demurrer is in substance, that no action can be maintained for or against a deputy-sheriff for any official act, but must in all cases be commenced for or against the sheriff, as head of the department.

*Vermont* Stat.
vol. 1. p. 307.

The statute regulating " the office and duty of sheriff, high bailiff, their respective deputies and constables," is explicit on this subject, and the whole course of practice has been conformable to it.

The second section enacts, That every person being so commissioned, shall be accounted the lawful sheriff of the County for which he is appointed, and shall have full power within his own County,

to serve and execute all lawful writs, processes and precepts to him directed, issuing from lawful authority; and do all things pertaining to the office and duty of sheriff, and shall have power in his County to appoint such number of deputies as the Judges of the County Court in such County shall from time to time limit and direct, which deputies shall have power to serve all processes, and to do all acts generally, which the sheriff is empowered or required by law to do and perform; and all acts, doings, and returns of such deputies shall be signed by them respectively as deputy-sheriff, and. *shall be taken and deemed as the act of the sheriff appointing them ;* and the sheriff shall in all things be amenable and responsible for the conduct of his deputies in office, and may take bonds or other sufficient security to indemnify him against the act or default of his deputy; and every deputy-sheriff shall, before he proceed in the execution of his office, cause his deputation and oath of office certified thereon to be recorded in the County Clerk's office of the same County; and if the sheriff shall, before such deputation expire, dismiss such deputy, or revoke any such deputation, such revocation shall be recorded in such County Clerk's Office, and all the acts and doings of any such deputy-sheriff before his deputation and oath of office shall be recorded as aforesaid, shall be null and void in law.

Provided always, That no sheriff shall be amenable criminally for the conduct of his deputy, other than for fines and amercements, for neglect of duty.

Here it is explicitly declared, that all acts and doings of the deputy, excepting such as are criminal,

Miller
v.
Goold.

shall be deemed and taken as the act of the sheriff appointing them.

The provision in the statute, that the sheriff may take bonds of indemnity against the acts or defaults of his deputy, affords a strong presumption that the Legislature intended in all cases that the action should be brought for and against the high sheriff; for if the action might be brought against or for the deputy, he must be considered alone responsible; and whence the necessity of the sheriff's taking bonds of indemnification of him?

The practice has uniformly been to bring suit in the sheriff's name for all official contracts made with his deputies. In the case of goods attached on mesne process, or taken by execution and receipted, to be returned to respond the judgment, or to be vended on execution, the receipt always runs to the deputy by name, but has always been prosecuted in the name of the high sheriff. So where goods attached or levied upon have been eloigned from the deputy, the action has always been maintained in the name of the sheriff. A variety of other cases may be put, but it is unnecessary to state particular cases, where the practice must be acknowledged to have been uniform, and conformable to an express statute.

There is a great and obvious propriety in the statute. The sheriff has the sole power to appoint his deputies, and to remove them from office at his pleasure. He may or may not appoint men of responsibility. He may take bonds with security, or waive their obligations of indemnity. The deputy is a creature of the principal, who the statute says shall be amenable, and responsible for the acts and doings of his servant; and it is highly reasonable, that this

<div style="text-align: right">Miller<br>v.<br>Goold.</div>

mere automaton of the sheriff should never appear in any suit accruing from his official acts but by his master and maker, and that the good people of the State should consider, that however incorrectly the sheriff's deputies may conduct, when their conduct is subjected to judicial investigation, they have only to do with the sheriff's department, as represented by the high sheriff, its legitimate head.

If it should be considered, that the official contract of the deputy-sheriff may be prosecuted in his name, and the practice should generally prevail, defendants who may recover against such deputies, may often find that they have been put to great expense without any ability in the plaintiff to respond the costs; for if the action can be maintained in the name of the deputy, and on the merits of the case the judgment should be against the deputy, it will not be contended, that in such case a subsequent action will lie for such costs against the sheriff.

But if the action is correctly brought in the name of the deputy-sheriff,

Our second exception is, that the contract is illegal, and no recovery can be had upon it. We believe that there is no position better established than that a plaintiff cannot recover upon an illegal contract. The reason given is, that he who seeks for justice must first do justice; as in the case of *Webb* and *Bishop*, before Lord Chief Baron *Reynolds*, cited in *Buller's Nisi Prius*, p. 16. where, in an action for five guineas on a boxing-match, the Judge held it *Riley's* edit. 1806. an illegal consideration, and the plaintiff was nonsuited. So, in the same page, 146. it is laid down, under the authority of *Levinz*, p. 174. " If the consideration be illegal, it will not uphold an *assumpsit;*

as where the defendant, in consideration of 20s. assumed to pay 40s. if he did not beat *I. S.* out of such a close." But what is more in point, it is expressly in 3 *Co.* p. 44. that if a sheriff or gaoler shall let go a prisoner, and *take a promise* of him that he shall come again by such a day, this will be an escape, albeit that the prisoner come again by the day." Why was this considered an escape? Because the contract was illegal. But the case of *Barnard* v. *Crane*, decided in *Rutland* County, *July* adjourned term, A. D. 1802, settled the point in this State.

Vide vol. 1. p. 457.

*Curia.* The decision in the case of *Andrew Barnard* v. *Lemuel Crane*, went upon the ground that the contract was *malum in se;* but too much time need not be consumed in showing, that the Court will not sustain an action upon an illegal contract. The main question will be, is the contract declared upon illegal? Proceed to show, that it is either *malum in se* or *malum prohibitum.*

*Cook.* This is no arduous task. It is laid down in the 6th of *Bacon's Abridgment,* p. 181. " If the sheriff, for the ease and enlargement of a prisoner, takes a promise to save him harmless, that is within the statute, being within the same mischief, though the statute speaks only of bonds. Here a statute, to wit, that of the 23d *Henry* VI. c. 9. which declared bonds taken by the sheriff in contravention of his official duty void, is construed to extend to verbal promises of the like nature; and it is added, that " *such promise is void by the common law.*" The reason is obvious. The law considers every contract illegal, which is made by a public officer against

the duties of his office. The *præcipe* in the writ of execution was to collect the debt, or to imprison the debtor. The deputy-sheriff had it in his power to arrest and imprison the debtor. It was his official duty so to have done; but in dereliction of his duty he contracted with the defendant that he would omit to do it. The law commanded him to *arrest* and *imprison.* The contract is, that *he shall not arrest and imprison,* and is expressly against law and the duties of his office.

Our third exception to the declaration branches into several particulars.

First. That the declaration does not allege that the plaintiff was ready to receive the body of the debtor on the day the defendant promised to surrender it.

Secondly. That no place within the town of *Rutland* is specified at which the body of the debtor was to have been surrendered; and,

Thirdly. That no demand is alleged to have been made by the plaintiff of the defendant to surrender the debtor.

Whenever a promise is made to do a specific act on action upon the failure of such promise, if the act be of such a nature as that it was necessary that the plaintiff should do something on his part, without which the defendant could not do such act, it is indispensably requisite that the plaintiff should set it forth in his declaration; for it is absolutely necessary that he should prove that he was himself ready and prepared to do such act. Natural justice requires this. So if I promise to deliver a chattel to a person at a certain time, or to erect a building for another, he find'ng the materials, if he brings suit against me

for non-performance, it is necessary that he should prove that he was ready at the time to receive the chattel, or that he had his materials prepared for me to erect the building; and whatever it is necessary substantially to prove, it is necessary formally to allege.

The promise, as set forth in the declaration, seems void in its nature; for it specifies no particular place in the shire town at which the debtor's body was to be surrendered by the defendant. As no particular place was designated in the contract, some place ought to have been pointed out by *innuendo*, to wit, the most reasonable place, otherwise we are precluded from an available defence by the vagueness of the contract; for on the superficies of an extensive township, we may have been at one place ready to surrender the body of the debtor, whilst the plaintiff may have been at another; and it would have been no good plea in bar to state that we were present at a place which suited our convenience, or which we considered the most reasonable, if the plaintiff was not there to receive it; and this leads us to the third branch of our last exception, that some especial demand should have been alleged to have been made by the plaintiff for the delivery of the debtor's body, on the day mentioned in the contract, which demand being alleged and proved, would have supplied the deficiency in the contract. When a contract is defective in some more inconsiderable part, as where money is to be paid or where goods delivered, the law supplies the deficiency by deciding that the most reasonable time and place shall be considered as the time and place intended by the parties; but, as in the present case, where one place within the town of *Rutland*

cannot be considered more reasonable than another for the surrender of the debtor; or in any case where one place cannot be considered more reasonable than another, the law renders it incumbent on the plaintiff, who prosecutes for a breach of the contract, to point out the place in which the contract is to be fulfilled; and this is to be done by a personal demand of the defendant, previous to bringing his suit; and this demand, as necessary to be proved, it is necessary to allege in the declaration.

*Prentice*, for the plaintiff. It will be observed, that the statute read renders the sheriff " amenable and responsible for the conduct of his deputies in office," " provided that he shall not be answerable criminally, other than for fines and amercements for neglect of duty;" " and all acts, doings and returns of such deputies shall be signed by them respectively as deputy-sheriff, and shall be taken and deemed as the act of the sheriff appointing them." The sheriff is by these several clauses made responsible for the official acts of his deputy in the ordinary routine of his official duty. And the practice has been, to institute actions for and against the sheriff on account of the acts, doings, and returns of his deputy. But the statute is silent as to the official contracts of the sheriff's deputies. In such cases the action may be brought in the name of either the sheriff or his deputy, and no injury can accrue to the defendant, if the latter mode be preferred. All that he can recover is his costs, which are secured by a bond of recognisance at the issuing of the writ; and if it should be necessary for the defendant to avail himself of any act of the high sheriff, as a dismissal from

office, &c. this he may show in pleading to the action brought by the deputy. But we do not consider the contract upon which this declaration is predicated to come within any of those *ordinary* official acts of the deputy by which his principal can be implicated. The plaintiff, as deputy-sheriff, had a writ of execution to serve and return. He was within view of the debtor, and was about to arrest him and commit him to prison. The defendant, brother to the debtor, promises the plaintiff, that if he would forbear to arrest him for a time, he would have him forthcoming in the shire town on a certain day within the life of the execution. This was a private contract between the plaintiff and the defendant, in which the high sheriff could have no interest. So far from it, if the defendant failed in his promise, an action would lie against the sheriff, on behalf of the judgment creditor, to recover the contents of his execution, with damages and costs, for the laches of his deputy in neglecting to serve it ; and the high sheriff would have an action against his deputy and his sureties, upon their bond of indemnification. But the sheriff could have no action on this contract. He was not a party to it, expressly or by implication of law. It was a contract made solely with the deputy to indemnify him for an action which might be brought against him by his principal, who, it is now said, ought to have brought the action. If this suit had been brought in the name of the high sheriff, the declaration would have been clearly demurrable ; and if he had failed in the action, he could not have been remunerated for his costs under the bond of indemnification executed to him by his deputy and his sureties ; for such bond only conditions against

all acts, defaults, laches, &c. by which the sheriff may be damnified, and would well cover the damages and costs which the sheriff might sustain by the neglect of the deputy in neglecting to serve the writ of execution, but would not cover the costs the sheriff might be put to by prosecuting a private contract made by his deputy; and this gives the true distinction between such acts or contracts of the deputy as may be prosecuted in his name, or must be in that of the sheriff. If the contract be in the ordinary duties of the sheriff's department, the suit should be in the name of the high sheriff, and on failure he can in all such cases have recourse to an action upon the deputy's bond for indemnification; but if the failure in an action upon the contract cannot be covered by the deputy's bond of indemnification, the action must be brought in the name of the deputy, as in the present case.

In reply to the second exception in demurrer, we contend, that this is not an illegal contract. A fair view of the nature of our writ of execution will show that the deputy-sheriff did nothing by this contract but what was in strict conformity with the humane intent and provision of the statute.

Whilst a suit is *sub lite*, it is always uncertain for which party final judgment will be rendered; and indeed suits of the greatest importance are often decided upon such nice points that the most sagacious of the profession cannot anticipate, with any degree of infallibility, a favourable issue for their clients. A final judgment therefore generally operates a surprise upon the losing party, which he is commonly unprepared to meet. The Legislature considering these things, have, by the proviso to the 95th section

Miller
v.
Goold.
Vermont Stat.
vol. 1. p. 94.

of the judiciary act, enacted, " That no execution shall issue on any judgment rendered by either the Supreme or County Courts, until *twenty-four hours* after the rising of such Courts, unless by the special permission of the Judges of such Courts." And in the body of this section it is declared, " That any writ of execution issued from either of the Courts aforesaid, shall be made returnable within sixty days, or to the next Court, (if not less than sixty days,) at the election of the party." The design of the Legislature is obvious. Twenty-four hours after the rising of the Court is allowed to the judgment debtor to discharge the judgment, to save the expense of officers' fees, and the injury to his feelings in having an execution taken out against him. If he cannot prevent this, the law allows him sixty days to satisfy the execution. But if the officer commits the debtor on the first day after issuing the writ of execution, the beneficial and humane design of the law is defeated. The sheriff will usually allow the debtor a reasonable part of this term of sixty days, to collect money to satisfy the execution, that is, if he considers the debtor as a person of integrity; for if he comes within view of the debtor, so that he might arrest him, even on the first day of the life of the execution, and should not be afterwards able to arrest him, he is responsible for the judgment debt. A case will frequently happen, where the sheriff, in the early life of the execution, sees the debtor. It is his duty to seek him early, and when he is once within his reach, the question arises, is he obliged immediately to arrest and imprison him? or he may contract with some responsible friend of the debtor, to see him forthcoming within the life of the execution,

and thus give the debtor time and opportunity to sa-
tisfy the same, and avoid imprisonment.  If he takes
such security, is this an illegal contract?  Has the
sheriff contracted not to do his official duty?  Is he
not walking in the spirit of his official duty?  The
statute allows the judgment debtor sixty days to sa-
tisfy the execution, and avoid a prison.  The offi-
cer has allowed the *same time*, and for the *same* hu-
mane purpose.

   If a debtor's personal property is taken by execu-
tion, or his land has been levied upon, he may in the
first instance, by tender of the debt and officers' fees
in the life of the execution, relieve his property,
and in the latter, a time is expressly allowed him to
redeem ; and his property, whether personal or real,
has, in the interim, served him in the nature of bail.
If property can, in these instances, save a debtor
from gaol, and afford him a time to collect the mo-
ney due on the judgment, why should not the con-
tract of a responsible man do the same?  What in-
jury does the creditor sustain by such contract?  If
the debtor who is thus bailed procures the money
to satisfy the execution, which he is better enabled
to do, by having a few days of liberty allowed him,
than if incarcerated, the creditor has all he can de-
sire.  If the debtor's body is returned by his bailor,
who promised to have him forthcoming in the life of
the execution, and the sheriff commits it, has the
creditor any right to complain?  Has he not obtained
all the satisfaction for his debt which the law con-
templates by imprisonment?  If the bailor does not
surrender the debtor according to his contract, the
creditor has an action against the high sheriff, and is
secured in his debt, which he might have lost by

<div align="right">Miller<br>v.<br>Goold.</div>

the commitment of a poor debtor. Who then is injured by this action being sustained? Who is injured if the demurrer should prevail? Why those whom the laws ought peculiarly to protect; the poor and distressed part of the community. If a judgment debtor has ostensible property, the sheriff can levy upon it, or safely allow him the run of the execution. But if a debtor has no ostensible property, or none which he can immediately command, though he may be enabled to satisfy the execution by even his manual labour, within the sixty days, and although his character is such, that the most responsible man would engage to see him forthcoming within the life of the execution, if the officer would omit to arrest him immediately, yet he must be immediately imprisoned. It surely would not be correct thus to deprive the poorer portion of the community of a beneficial and humane provision of the law, especially as it must have been designed peculiarly for their benefit. We consider, therefore, that the contract declared upon, so far from being illegal, is strictly within the line of the deputy-sheriff's duty, and in pursuance of the spirit of the statute.

In reply to the demurrant's third exception, we observe, that this is an express contract, and the question is not now, whether one might not have been made more explicit, or more convenient for the parties. The defendant, we allege, promised to surrender the body of *Jacob Goold*, in *Rutland*, on the fourth *Monday* of *May*, A. D. 1801, to the plaintiff, so that it might be charged with a certain writ of execution, which the plaintiff held as deputy-sheriff. The defendant now says this contract is vague, because it does not specify any particular place in that

town at which the debtor was to have been delivered. *Miller*
If no particular place within the town was mentioned, *Goold.*
the most reasonable must have been intended by the
parties; but this is no sufficient exception in de-
murrer, nor was the plaintiff, in his action for the
breach of the promise, obliged to set forth the most
reasonable place. If the defendant had the body of
*Jacob Goold* in *Rutland*, ready to have been deliver-
ed upon the day agreed upon, he should have plead-
ed it in bar, and the question might have arisen whe-
ther the place was reasonable; and this might have
been brought to issue by the pleadings. But it is
said that the plaintiff should have alleged that he was
ready to receive the body of the debtor, or that he
demanded it of the defendant.

When a promisor engages for a legal considera-
tion to do a thing, and is sued for the non-perform-
ance, it is sufficient for him to show in defence that
he has done all he promised to do, so far as he was
able, without the concurrence of the plaintiff, and
the plaintiff is not obliged to allege a special *tems
prist*, or a special demand where the contract is to
deliver at a certain day and place; these being only
necessary to be alleged where the time and place are
not included in, or where a special demand is made
part of, the contract.

*Cook* declined replying to the plaintiff's counsel.

Judgment, that the declaration is sufficient.

*Samuel Prentice*, for the plaintiff.
*John Cook*, for the defendant.